Court of Criminal Appeals no. WR-[83,424-03]
Trial Court no: 2006 CRN 000770 D1(A)

83,424-03

Ex Parte Gabriel Cardona                    §          In the 49th JUDICIAL

§          DISTRICT RECEIVED IN
§          W COURT OF CRIMINAL APPEALS
§
§          JUN 29 2015
§
§          Abel Acosta, Clerk
                                                      Noted: May 29, 2015

## APPLICANTS MEMORANDUM IN REPLY TO THE STATES RESPONSE TO THE APPLICATION FOR 11.07 WRIT

Now comes Gabriel Cardona, applicant pro-se and files this Memorandum in reply to the State's response to the Application of Writ of Habeas Corpus, and respectfully show the Court as follows:

## I. FACTS

The State filed a response to the Applicants Writ of Habeas Corpus on the 22nd day of May 2015. The Applicant filed his Application through certified mail, certified no: 7014 1820 0001 2048 9285, and delivery date being the 30th day of April 2015. Certified mail was delivered to the District Clerk.

The State invokes the Laches protection as a bar to the Application. Although the State cites caselaw in support of its point that the State need not make any particularized showing of prejudice, the State nevertheless states it suffered prejudice" in its ability to investigate and prepare a defense to the Application". Alternatively, the State prays the Court to require the Applicant to satisfy one of three components to climb over the Laches barrier.

The State further claims that the applicant fails to meet the 11.07 standards with respect to the 11.9 "factual basis" and facts not being pled to demonstrate "Strickland prejudice".

That the Applicant offers nothing more than speculation for his Conflict of Interest claim

The State further states that the plea agreement and judgment of conviction "clearly" set out that the State sentence would run concurrent with any Federal sentence.

Lastly, the State introduces an affidavit by Counsel Sosa, Fausto, after being duly sworned and notarized as being true. Counsel Sosa states that he thoroughly interviewed the witnesses, investigated the facts of the case and advised applicant accordingly. Denies the allegation that he protected the daughter of a former client from the rigors of cross examination and acknowledges that a point of negotiation was applicants "input" regarding his Federal Sentence.

## II. Argument

The filing of the States response is untimely. In accordance with Article 11.07 of the Texas Code of Criminal Procedures, the State has 15 days to file a response. Proof of delivery dates 4/30/15 for certified mail no: 7014-1820-0001-2048-9285, that is the 30th day of April 2015. The States response filing date would be expired on or about the 16th day of May 2015.

'Laches': The State is not "materially prejudiced" by the delay in filing the 11.07 Application and it is not prejudiced "in its ability to investigate and prepare a defense to the Application." 1) The State is in possession of the entire offense report. The Laredo Police Department has the entire report as well which investigator Roberto Garcia and Joe Baeza (spokes person) have been giving to the media like flyers; 2) The Federal Government filed a "Travel Act" indictment against codefendants, coconspirators and applicant, which is still officially open and involves this case as part of its racketeering element; 3) The State and Federal Government have been cross engaging their witnesses, codefendants, with each other to the benefit of one another; 4) the Federal Government has secured witnesses, evidence, and testimony; 5) The witnesses the State had at the time of Applicants trial, Raul Jasso, who makes 100% of the State's case, is still in Federal Custody as a Government witness; Christine Lozano is in no more or less of a disposition from the time of Applicants trial; 6) The state may have the added benefit of or from Aurora del Bosque, who would be inclined to assist the State. Certainly the State is in a more favorable position and is not prejudiced and could have conducted a proper investigation.

Applicant also filed a "REQUEST FOR DUE CREDIBILITY OF CLAIMS" wherein applicant gives a thorough explanation for such delay in filing the application. Such explanation should satisfy the "justifiable excuse" or "excusable neglect" requisite. (See Applicants "REQUEST FOR DUE CREDIBILITY" ~~attachment~~ ... including its attachment of "Exhibits" as proof for such delay.)

Heretofore, the applicant satisfies at least two of the three components the State invokes. Accordingly, the Laches protection should respectfully fail.

Factual basis and prejudice:

Applicant styled his petition in the "cumulative error" fashion rather than in the "single error". That is that the cumulative effect of Counsel's errors prejudiced him, including the other errors committed by the Court, in that applicant did not (could have not) make a "fully informed" and "conscious choice" i.e. intelligent, knowing and voluntary admission of guilt. The State raises the claim in its response under a "individual error" or "single error" notion. The U.S. Supreme Court has held that the ~~cumula~~ prejudicial effect of Counsel's errors must be considered cumulatively rather than 'individually. See Williams v. Taylor, 529 U.S. 362, 120 s.ct. 1495, 1515, 146 L.Ed. 2d 389 (2000). The Court of Criminal Appeals has also recognized and ruled ~~and~~ that concept. See e.g Ex Parte Welborn, 785 S.W. 2d 391 (Tex. Cr.App. 1990) Applicant styled his petition in that had counsel done "all the above" and advised applicant accordingly, it is reasonable to conclude that there exists a reasonable probability one would not have plead guilty but proceeded to trial. See e.g. Ferrara v. U.S. 456 F.3d 278 294 (1st Cir. 2006) ("a reasonable probability" is a probability sufficient to undermine confidence in a belief that the [applicant] would have entered a plea) Applicant would also respectfully remind the Court that the U.S. Supreme Court has held that pro se filings should be "construed liberally". The interests of ends of Justice so requires. See e.g. Haines v. Kerner, 404 U.S. 519, 520, 30 L.Ed 2d 652 (1972). Applicant is not a lawyer, applicant is proceeding pro se, with what he has learned through thorns and thistles, but nevertheless makes the best effort to be as precise as possible. Applicant filed an "Affidavit of Facts In General" as well wherein he explains to the Court how he was affected and why he plead guilty. (See Affidavit of Facts

"in General") His filings construed liberally, or by reading the petition as stated above, in the "cumulative error" concept, establishes that applicant did not make an intelligent, knowing, and voluntary admission of guilt, prejudiced by Counsels errors.

Conflict of Interest claims under Cuyler can be established if a petitioner demonstrates than an actual conflict of interest had an "adverse effect" on Counsels performance. Counsel did not interview Christina Lozano, the "other evidence" that according to the report would corroborate the Accomplice Witness testimony. By foregoing interviewing Lozano, Counsel was precluded from making a proper assessment of the facts of the case. Instead, Counsel was operating under a misconception that Lozano's statements were material to the fullest extent and seemed to give up on the case. When in actuality, Lozano's statements were not personal knowledge and were coerced and/or hectored. Consequently, Counsel could not move to suppress those statements under the 14th Amendment. Counsel did not deny making those comments to Lozano and mother. Therefore, those comments are not with a clients best interests at heart. Counsel literally implied that Lozano should stay away from applicant. (See Applicants Memorandum afor more case law citing and further argument.)

## Counsels Affidavit:

Counsel states he interviewed "thoroughly" the witnesses and investigated the facts of the case. Had Counsel interviewed Christina Lozano, Counsel would learn that Lozano was verbally and mentally harrassed, thus hectored into making those statements. Having done so, Counsel could have moved to exclude her. It would have left the State without corroboration to the Accomplice Witness. Having done so and advised applicant accordingly, who would plead guilty knowing that? Applicant wouldn't. There would have been a reasonable probability of acquittal. But Counsel for some reason forewent interviewing Lozano. Counsel further concedes to all other claims.

The State claims that applicants State sentence would run concurrent with his Federal sentence. They're not. Such proposition by the State, unsupported by case law, also constitutes inducement because the State has absolutely no authority with or over the Federal Government. A legal wording that would seem ironclad would be the following: The State agrees to relinquish custody IF the Federal Government and Court agree to run their sentence concurrent (with the States). Obviously, such proposition would always fail to induce defendants. The big word "if" leads any common sensical person to believe and know that: 1) The State has no authority over Federal Court; and 2) there's risk that Federal Court will not run the sentence concurrent (Fed). The reality of the situation is that applicant was told that his future Federal sentence would run concurrent. Applicant's sentences are not concurrent. The State's point fails. Applicant was not told that the State or Court had no authority over Federal Court. Something that Counsel concedes to.

### III. Adequate Record

Applicant respectfully reminds the Court that an "adequate record is imperative to properly evaluate ineffective assistance of Counsel claims". See Mattheney v. Anderson, 253 F.3d at 1040 (citing U.S. v. Draves, 103 F.3d 1328, 1335 (7th Cir. 1997)). And a petitioner [or applicant] is "entitled to an evidentiary hearing ... in order that he might be given the opportunity to offer evidence to develop the factual basis of his claim." id. at 1040

Applicant filed a Motion for Evidentiary Hearing with his application.

## IV. Conclusion

WHEREFORE, PREMISES CONSIDERED, applicant prays that the State's response be rejected, and for further relief to which applicant may be entitled.

Respectfully submitted June 2nd 2015
Gabriel Cardona #1444672
All Red Unit
2101 F.M. 369 N.
Iowa Park, Tx 76367

## Certificate of Service

A copy of this document was mailed through first class mail on the 2nd day of June 2015, to the District Attorney's Office in Webb County, Laredo, Texas. With address of 1110 Victoria ste. 401. Zip Code 78040. Recipient being ADA Michael Bukiewicz.

Gabriel Cardona

**BJECT:** *State briefly the problem on which you desire assistance.*

No: _____

I would like to mai~~l~~ a legal package through certified mail, return receipt requested. Could you please come and pick up the package to weigh please. Determine the postage.

~~ame:~~ Gabriel Cardona                    1444672          Unit: J.4

~~ving~~ Quarters: HSK-226                    Work Assignment: _____

**ISPOSITION:** (Inmate will not write in this space)

Pick up KC. Logged Out 6/3/15
Sent to Post Office 6/5/15

~~I-60 (Rev. 11-90)~~

---

**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provi~~ded~~)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ 2.68 |
| Certified Fee | 3.30 |
| Return Receipt Fee (Endorsement Required) | 2.80 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 8.68 |

Postmark Here    IOWA PARK TX

~~Sent To~~ Esther Degollado Clerk
~~Street, Apt. No.; or PO Box No.~~ 1110 Victoria st. (Ste. 2~~03~~)
~~City, State, ZIP+4~~ Laredo, TX 78042

~~PS~~ Form 3800, August 2006        See Reverse for Ins~~tructions~~

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Esther Degollado - Clerk
1110 Victoria st. (Ste. 203)
Laredo, TX 78042

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery    JUN 08 2015

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail®    ☐ Priority Mail Express™
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7013 0600 0000 5186 8427

PS Form 3811, July 2013        Domestic Return Receipt

RECEIVED IN
COURT OF CR~~IMINAL APP~~EALS

JUN 29 ~~20~~15

Abel Acosta, Clerk